UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**,

v.

**WAYNE HOLROYD**,

Defendant.

Case No. 1:17-cr-00234-2 (TNM)

## MEMORANDUM AND ORDER

Last year, the Court sentenced Wayne Holroyd to 120 months in prison after he pled guilty to one count of conspiracy to distribute and possess with intent to distribute more than 280 grams of a mixture or substance containing a detectable amount of cocaine base.  Judgment at 1–2,[1] ECF No. 198; *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), 846.  He is currently incarcerated at the Federal Correctional Institution ("FCI") in Ashland, Kentucky.  Holroyd moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), citing health conditions that make him vulnerable to the COVID-19 virus.  Def.'s Renewed Mot., ECF No. 231.  The Government opposes his release.  Gov't Opp'n, ECF No. 226.  Upon careful consideration of the parties' briefs, the relevant law, and the entire record of this case, the Court denies Holroyd's motion for the reasons below.

### I.

A grand jury returned an indictment against Holroyd and several co-defendants.  Superseding Indictment, ECF No. 25.  It charged Holroyd with five substantive counts of distributing cocaine base and one conspiracy count.  *Id.* at 1–3, 14–15.  The Court ordered

---

[1]  All page citations refer to the page numbers that the CM/ECF system generates.

Holroyd detained pending trial, finding that he posed a danger to the community.  Mem. Op. at 6, ECF No. 23.

Holroyd pled guilty to the conspiracy charge, in exchange for the Government dismissing the substantive counts.  Plea Agreement at 1–2, ECF No. 92.  He admitted his involvement in a drug trafficking ring in the Southeast area of Washington, D.C.  Gov't Proffer of Proof at 4, ECF No. 93.  The FBI led the investigation.  *Id.*  On multiple occasions, an undercover officer bought crack cocaine from one of Holroyd's co-conspirators.  *Id.*  Holroyd supplied this co-conspirator. *Id.*  All told, the co-conspirator sold the officer $10,080-worth of crack cocaine.  *Id.*

The FBI also intercepted communications in which Holroyd discussed obtaining and distributing cocaine.  *Id.*  Agents executed a search warrant on Holroyd's residence and recovered two digital scales and 26 grams of cocaine.  *Id.*  Holroyd acknowledged "that he joined and assisted in the drug trafficking conspiracy knowing that the primary purpose of the conspiracy was to distribute and possess with the intent to distribute more than 280 grams of suspected crack cocaine."  *Id.*

Holroyd's conspiracy conviction carried a mandatory minimum sentence of 120 months. 21 U.S.C. §§ 841(b)(1)(A)(iii), 846.  If he were a career offender under the Sentencing Guidelines, the advisory sentencing range would have been 262 to 327 months.  Revised Final PSR ¶ 108, ECF No. 195.  But the Court found that he was not a career offender, so the advisory sentence was the mandatory minimum—120 months.  Statement of Reasons at 1, ECF No. 199. The Court sentenced him to the mandatory minimum and 60 months of supervised release. Judgment at 2–3.

Holroyd is currently incarcerated at FCI Ashland, with a projected release date in 2026. Gov't Opp'n Ex. D at 1, ECF No. 226-4.  As of May 1, he has served 24% of his sentence.

Gov't Opp'n Ex. A at 2, ECF No. 226-1.  Holroyd twice asked the warden at FCI Ashland for

the Bureau of Prisons ("BOP") to move for compassionate release on his behalf, first on April 17

and then again on April 28.  Def.'s Reply Ex. A at 2–4, ECF No. 228-2.  The warden denied his

requests.  *Id.* at 2–3.

On April 30, Holroyd, proceeding *pro se*, filed a motion for compassionate release.

Def.'s Mot., ECF No. 224.  After the Government responded, the Court appointed the Federal

Public Defender ("FPD") to represent Holroyd and reply on his behalf.  Minute Order (May 12,

2020).  The FPD ably did so.  The reply makes clear that Holroyd's motion is under 18 U.S.C.

§ 3582(c)(1)(A)(i) and that he asks the Court to reduce his sentence to time served.  Def.'s Reply

at 1, 54, ECF No. 228.  Holroyd then filed a renewed motion on May 22, adopting the claims he

raised in his original motion and reply.  Def.'s Renewed Mot. at 1.[2]  This motion comes more

than 30 days after the warden received his first request on April 17, so it is properly filed, and the

Court turns to the merits.  *See* 18 U.S.C. § 3582(c)(1)(A).

## II.

A court may reduce a defendant's term of imprisonment if, "after considering the factors

set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable, . . . it finds

that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a

reduction is consistent with applicable policy statements issued by the Sentencing Commission."

18 U.S.C. § 3582(c)(1)(A)(i).  Under the Commission's applicable policy statement, a court may

reduce a term of imprisonment "if, after considering the factors set forth in 18 U.S.C. § 3553(a),

to the extent that they are applicable, the court determines that . . . (1)(A) Extraordinary and

---

[2]  The Court deems the Government's original opposition to be re-filed for purposes of the
renewed motion and has considered it along with Holroyd's submissions.  *See* Order (May 21,
2020), ECF No. 230.

compelling reasons warrant the reduction . . . (2) The defendant is not a danger to the safety of

any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) The reduction

is consistent with this policy statement." USSG § 1B1.13.[3]

As the movant, Holroyd has the burden of establishing that he is eligible for a sentence

reduction under § 3582(c)(1)(A)(i). *See, e.g.*, *United States v. Jones*, 836 F.3d 896, 899 (8th Cir.

2016) (noting that the defendant has the burden of establishing that he is eligible for a sentence

reduction under 18 U.S.C. § 3582(c)(2)).

## III.

A defendant seeking release under § 3582(c)(1)(A)(i) has a steep hill to climb. First, he

must show that "extraordinary and compelling reasons" warrant it. 18 U.S.C. § 3582(c)(1)(A)(i).

Even if he can get past that hurdle, he must also show that release "is consistent with applicable

policy statements issued by the Sentencing Commission." *Id.* The applicable policy statement

requires him to show that he "is not a danger to the safety of any other person or to the

community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). And even then, he must

show that the sentencing factors in 18 U.S.C. § 3553(a) justify release. *See United States v.*

*Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020) (affirming a district court's decision to deny

compassionate release based on the balance of factors in § 3553(a), even though there were

"extraordinary and compelling reasons" for release and the defendant posed no danger).[4]

---

[3] Though USSG § 1B1.13 refers only to compassionate release motions filed by the BOP on a defendant's behalf, the parties agree that it applies equally to motions filed by a defendant. *See* Gov't Opp'n at 8 & n.2; Def.'s Reply at 7 & n.11. Section 1B1.13 was last amended in November 2018, one month before defendants gained the ability to file motions for compassionate release. *See* First Step Act, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (Dec. 21, 2018).

[4] Another judge of this District has suggested that a finding of dangerousness under § 1B1.13(2) is not an independent ground to deny a motion under § 3582(c)(1)(A)(i). *See United States v.*

Holroyd does not dispute that he must show (1) "extraordinary and compelling reasons" for release; (2) that he poses no danger to the community; and (3) that the factors in § 3553(a) favor release.  *See* Def.'s Reply at 27, 50.  He claims he has made the necessary showing on each front.  The Court disagrees.

## A.

To begin with, Holroyd has not shown that "extraordinary and compelling" reasons justify release.  For guidance on this issue, both parties point to the first application note in USSG § 1B1.13.  Gov't Opp'n at 8, 16–17; Def.'s Reply at 7.  Per that note, one "extraordinary and compelling" reason is when the defendant suffers from "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  USSG § 1B1.13, comment. (n.1(A)(ii)(I)).  There can also be "extraordinary and compelling reason[s] other than, or in combination with" the specific reasons listed in the application note.  *Id.* § 1B1.13, comment. (n.1(D)).  The Government concedes that if an inmate has a medical condition that makes him especially vulnerable to COVID-19, this may in *some* cases warrant release, "even if that condition would not have constituted an 'extraordinary and compelling reason' absent the risk of COVID-19."  Gov't Opp'n at 17.  But it maintains that release is not appropriate in Holroyd's case.  *Id.* at 17–18.

---

*Johnson*, No. 15-cr-125 (KBJ), 2020 WL 2515856, at *4 n.3 (D.D.C. May 16, 2020).  But as that decision recognizes, considering a defendant's dangerousness is, at the very least, part of the balancing of factors under 18 U.S.C. § 3553(a).  *See id.*  Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(1), (2)(C).  Indeed, these factors dovetail with those relevant to a finding of dangerousness under 18 U.S.C. § 3142(g), which include "the nature and circumstances of the offense charged" and "the history and characteristics of the person."  *Id.* § 3142(g)(1), (3).

Holroyd, for his part, argues that the "extraordinary and compelling" reason warranting release is the combination of the COVID-19 pandemic, the BOP's "inability" to contain the pandemic, and his medical conditions and other risk factors that make him especially vulnerable to the virus.  Def.'s Reply at 27–50.  This argument is unavailing.

The COVID-19 pandemic has emerged as a global and national health emergency.  As of May 17, the BOP reports that 4,732 inmates and staff have tested positive for the virus, and 55 inmates have died.  *Id.* at 33.  Motions from pretrial detainees, presentencing detainees, and BOP inmates like Holroyd have been filed in dozens of cases in this District alone, with extensive allegations about the dangers of the viral pandemic.  The Government does not contest its threat. Gov't Opp'n at 4.  And, like other judges in this District and across the country, the Court takes notice of the real and serious threat that the COVID-19 pandemic poses.

Holroyd insists that the BOP has shown an inability to contain the spread of the virus. Def.'s Reply at 30–44.  As the Government notes, however, the BOP has taken several measures to protect its inmates and staff.  Gov't Opp'n at 4–7.  For example, it is actively screening and quarantining inmates, limiting movement within its facilities, and maintaining social distancing. *Id.* at 4–5; *see* Fed. Bureau of Prisons, *BOP Implementing Modified Operations*, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited May 26, 2020).  Indeed, Holroyd himself has been in quarantine since he was transferred to FCI Ashland in March 2020. Def.'s Reply at 45.  This presumably will offer significant protection both to him and others he would have otherwise contacted.  The BOP has also been exercising greater authority to place certain inmates on home confinement, typically those who are elderly, terminally ill, or near the end of their sentence.  Gov't Opp'n at 6; *see* Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020) (to be codified at 18 U.S.C.

§ 3621 note); *see also* 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g).  Holroyd's generalized allegations about the BOP's response to the pandemic are not enough to justify release.

That is especially so here, because as Holroyd acknowledges, his facility—FCI Ashland—so far "has not reported a positive case."  Def.'s Reply at 38.  To be sure, this does not mean that FCI Ashland will never have positive cases, but it suggests that the BOP's protective measures at that facility are working.

Holroyd—who is 41 years old—stresses that four factors put him at risk of "severe complications if he were to contract COVID-19"—having hypertension, not having a spleen, being a male, and being an African-American.  *Id.* at 44; *see also* Sealed Doc., ECF No. 232 (medical records).  The Government suggests that Holroyd does not suffer from hypertension problems anymore, *see* Gov't Opp'n at 18, but for purposes of this motion, the Court will accept that all four risk factors are present and that they make him especially vulnerable to the virus.  *See* Def.'s Reply at 44–50.  The Court is sympathetic to Holroyd's situation and does not take lightly his fear of contracting the virus.  But these circumstances still do not present "extraordinary and compelling reasons" for reducing his sentence to time served.

For one, as already noted, the BOP has taken measures to protect inmates, FCI Ashland does not have any positive cases, and Holroyd himself is under quarantine.  So the Court does not accept that Holroyd's risk of contracting the virus at FCI Ashland is as high as he suggests.  And if it were, releasing him would potentially inject a carrier of the virus into the community.  More, as several judges have observed, a defendant is at risk of contracting COVID-19 whether he is in prison or not.  *See, e.g.*, Minute Order, *United States v. Oseguera Gonzalez*, 20-cr-40 (BAH) (D.D.C. Mar. 24, 2020).

Holroyd accepts that even if released, he would still be on supervision for 60 months. Judgment at 3; Def.'s Reply at 54.  This status could pose "heightened safety risks . . . to the probation officers who would be tasked with monitoring his behavior."  *United States v. Lee*, 19-cr-298 (KBJ), 2020 WL 1541049, at *5 (D.D.C. Mar. 30, 2020).  Indeed, probation officers are currently unable to conduct many of their normal in-person community contacts and monitoring services.  So if the Court released Holroyd, there is a risk that he would not be subject to adequate supervision during the pandemic.

That is especially problematic here, because as the Court will discuss, Holroyd pled guilty to a serious crime and still poses a danger to the community.  *See infra* Sections III.B & III.C.  If a defendant still poses a danger to the community or if the balance of factors under 18 U.S.C. § 3553(a) favor continued imprisonment, these are independent reasons to deny a motion for compassionate release.  *See* USSG § 1B1.13(2); *Chambliss*, 948 F.3d at 693–94.  But these considerations still factor into whether there are "extraordinary and compelling reasons" for a sentence reduction in the first place.  Under the statute, the Court may reduce a sentence "if it finds that . . . extraordinary and compelling reasons warrant such a reduction" "*after* considering the factors set forth in [18 U.S.C. § 3553]," and these factors include "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. §§ 3553(a)(1), 3582(c)(1)(A)(i) (emphasis added); *see also* USSG § 1B1.13(1)(A).

This holistic approach is analogous to how courts analyze whether the "temporary release" of a pretrial detainee is "necessary . . . for [a] compelling reason."  18 U.S.C. § 3142(i). Other judges in this District have noted that the factors in 18 U.S.C. § 3142(g), which include "the nature and circumstances of the offense charged" and "the history and characteristics of the person" inform whether there is a "compelling reason" that warrants release under § 3142(i).

*See, e.g.*, *United States v. Otunyo*, No. 18-cr-251 (BAH), 2020 WL 2065041, at *8 (D.D.C. Apr. 28, 2020).  So too here.  The Court thus finds that the seriousness of Holroyd's offense and the danger he poses, *see infra* Sections III.B & III.C, cut against the existence of "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i).

Given all these circumstances, Holroyd has not shown "extraordinary and compelling reasons" that justify reducing his sentence to time served, and this is a sufficient reason to deny his motion.

**B.**

The Court also finds that a sentence reduction is not warranted because Holroyd still poses "a danger to the safety of . . . the community, as provided in 18 U.S.C. § 3142(g)."  USSG § 1B1.13(2).  The factors under § 3142(g) are (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

Before Holroyd pled guilty to any charges, the Court denied his motion for pretrial release, concluding that, based on the § 3142(g) factors, "no release conditions . . . would reasonably assure the safety of the community."  Mem. Op. at 3, ECF No. 23.  The nature and circumstances of the charged offenses favored detention, because Holroyd had been indicted for "serious narcotics trafficking charges."  *Id.* at 4.  Recognizing that the alleged crimes did not involve "weapons or violence," the Court still found it significant that Holroyd "may be a ringleader" in the conspiracy, that he allegedly "sold crack cocaine in larger amounts," and that officers had recovered a "substantial amount" of crack cocaine from his apartment.  *Id.*  The weight of the evidence against Holroyd was "overwhelming," given the cocaine in his apartment,

his presence at controlled buys, and intercepted communications that recorded him arranging drug transactions. *Id.* at 4–5.

The third factor—Holroyd's history and characteristics—narrowly favored release. *Id.* at 5. Holroyd had family support and his prior convictions were "from more than 15 years ago." *Id.* Still, the Court found that the fourth factor—Holroyd's dangerousness—favored detention, given his alleged involvement in a drug trafficking ring. *Id.* The Court stressed that "[t]he distribution of large quantities of narcotics into the community poses a significant danger to communal safety." *Id.* And given the presence of cocaine in Holroyd's apartment, there was "a substantial risk that [he] would introduce narcotics into the community if he were released." *Id.* at 5–6. Home confinement was an insufficient alternative to detention in part because "narcotics can be sold from one's home at any hour." *Id.* at 6. In sum, Holroyd posed a "danger to the community," so detention was warranted. *Id.*

Holroyd later pled guilty, and the Government's proffer of evidence—which Holroyd accepted—confirms the danger he poses. Gov't Proffer of Proof at 4–6. He admitted his involvement in a conspiracy whose goal was to distribute more than 280 grams of crack cocaine. *Id.* at 4. He supplied a co-conspirator with cocaine, and that co-conspirator sold $10,080-worth to an undercover officer. *Id.* Holroyd helped arrange drug transactions and had in his residence two digital scales and 26 grams of cocaine. *Id.*

At sentencing, the Court noted that Holroyd was a "mid-level dealer" in the enterprise, whose role was to supply others and to sell directly to users. S. Tr. at 17.[5] The Court stressed the "tremendous consequences" that drug dealing has for the community. *Id.* Holroyd himself

---

[5] Citations to the sentencing transcript refer to a rough draft. Pagination may differ from a final draft of the transcript.

had not engaged in violence, but the drug trade fuels violence, death, and addictions. *Id.* at 17–18.  And while Holroyd did not have a recent criminal record, his prior convictions were drug-related, so the Court was concerned that he was reverting to troubling prior habits. *Id.* at 18–19.

Holroyd insists that he "does not pose any danger to the public." Def.'s Reply at 51.  He claims that he will shelter in place if released, given his vulnerability to the virus. *Id.*  But as the Court noted in its detention order, "narcotics can be sold from one's home at any hour." Mem. Op. at 6.  Holroyd also emphasizes that he has no history of violence or using weapons. Def.'s Reply at 51.  But the Court considered these mitigating factors in its detention order, yet still concluded that he poses a danger given the nature and circumstances of his offense. Mem. Op. at 4–6.  And as the Court explained at sentencing, a drug dealer need not himself be violent to fuel violence in the community. S. Tr. at 17–18.

In sum, the Court expressly found that Holroyd posed a danger to the community even before he pled guilty for his role in the drug trafficking scheme.  And then at sentencing, the Court detailed how Holroyd's specific conduct endangered the community.  Holroyd has not offered any persuasive reason why the Court should find that he no longer poses a danger. *See* Def.'s Reply at 50–55.

## C.

Finally, based on the factors in 18 U.S.C. § 3553(a), Holroyd's full 120-month sentence remains appropriate and "not greater than necessary" to comply with the purposes of sentencing. This too is a sufficient reason to deny Holroyd's motion. *See Chambliss*, 948 F.3d at 693–94.

The relevant considerations here largely dovetail with the factors the Court has already discussed in relation to the danger that Holroyd poses. *See supra* note 4.  While Holroyd presents some mitigating factors such as a limited criminal record, the nature and circumstances

of his crime strongly favor continued incarceration. 18 U.S.C. § 3553(a)(1). He was a supplier in a drug trafficking ring that distributed more than 280 grams of crack cocaine. Even though there was no evidence that Holroyd himself was violent, this is still a serious offense that begets violence and poisons the community. Anything less than a 120-month sentence—which, after all, is the product of a mandatory minimum—would not "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment," or "afford adequate deterrence." *Id.* § 3553(a)(1), (2)(A)–(B). And given the danger that Holroyd poses to the community, releasing him would conflict with the goal of "protect[ing] the public from further crimes of the defendant." *Id.* § 3553(a)(2)(C).

Holroyd zeroes in on his non-violent record, noting that some defendants with violent records have successfully petitioned for release under 18 U.S.C. § 3582(c)(1)(A)(i). *See* Def.'s Reply at 53–54. He argues that his release "would be consistent with 18 U.S.C. § 3553(a)'s aim to avoid unwarranted sentence disparities." *Id.* at 53. But the need to avoid unwarranted disparities is just one factor, *see* 18 U.S.C. § 3553(a)(6), and Holroyd's argument proves too much. Under his theory, every incarcerated defendant with a non-violent record would need to be released simply because some defendants with violent records have been released. But that categorical principle cannot be right. Section 3553(a) calls for an "individualized assessment" of each defendant, *Gall v. United States*, 552 U.S. 38, 50 (2007), and the Court finds that continued incarceration is appropriate in Holroyd's case, which involved a crime that fuels violence, even if itself non-violent.

More, the most apt comparators here are Holroyd's co-defendants. Holroyd's 120-month sentence was among the highest imposed for the conspiracy. *See* Revised Final PSR ¶¶ 27–37. As the Court observed at sentencing, his conduct was "as serious or more serious" than the

actions of his co-defendants.  S. Tr. at 21.  Under these circumstances, reducing Holroyd's sentence to time served—in effect granting him a windfall relative to his co-defendants—would be inconsistent with the need to avoid unwarranted sentence disparities.

In sum, the balance of factors under § 3553(a) still supports a prison sentence of 120 months.

## IV.

For all these reasons, it is hereby

**ORDERED** that the Defendant's [231] Renewed Motion for Compassionate Release is DENIED.[6]

Dated: May 26, 2020
                                                                                          _____
                                                                                          TREVOR N. McFADDEN, U.S.D.J.

---

[6] Holroyd does not request a hearing on his motion, and the Court finds one unnecessary here. *See* LCrR 47(f).